**William E. Williams, Appellee, v. The Western Union Telegraph Company, Appellant.**

**Gen. No. 30,602.**

Damages—*measure of damages for erroneous transmission of telegraphic offer where acceptance and performance followed under mutual mistake of fact due to such error.* Where the author of a report upon a patented article telegraphed an offer to a prospective purchaser of such report to furnish it a copy thereof for $500, but through the negligence of the telegraph company the price asked was quoted at $53 and the offer was accepted at the erroneous quotation, after which the report was mailed by the author in ignorance of the mistake, and it did not appear that the author, after discovery of the error, either demanded a return of the report or took any steps to prevent its use by the customer, such author was entitled to only nominal damages from the telegraph company, in the absence of proof as to when the customer, by giving publicity to the report, rendered it valueless to the author.

Appeal by defendant from the Municipal Court of Chicago; the Hon. Albert B. George, Judge, presiding. Heard in the first division of this court for the first district at the October term, 1925. Reversed and remanded. Opinion filed June 14, 1926. Rehearing denied July 2, 1926.

West & Eckhart, for appellant; Francis R. Stark and Joseph L. Egan, of counsel.

HARPER E. OSBORN, for appellee.

MR. JUSTICE JOHNSTON delivered the opinion of the court.

This is an action in assumpsit brought by William E. Williams, the plaintiff, against The Western Union Telegraph Company, the defendant, to recover damages for an alleged breach of contract by the defendant for erroneously transmitting a telegram sent by the plaintiff to the Precision Chain Corporation.

The case was tried before the court without a jury.

The court found against the defendant, assessed the plaintiff's damages at the sum of $447, and entered judgment on the finding. From the judgment the defendant has prosecuted this appeal.

The statement of claim of the plaintiff is based on the theory that after the report "had been delivered" to the Precision Chain Corporation, the Precision Chain Corporation "appropriated" the report and "made public" the report, and refused "to pay the plaintiff the difference between $53 and $500"; that the "plaintiff was unable to collect the same from said Precision Chain Corporation"; and "that by reason of the carelessness and negligence on the part of the defendant, through its agents, servants and employees in that behalf, plaintiff has suffered a loss of four hundred and forty-seven dollars ($447)." In reaching its finding in the amount of $447, which is the difference between the $500 and the $53, the court proceeded on the theory on which the statement of claim is based.

The plaintiff was a consulting engineer of over 45 years experience, and was an expert in patent matters. His chief occupation consisted in making reports as to the commercial value of industries founded on patents and mechanical devices. He had prepared an extensive report on the "Precision Chain" and of the machinery for the manufacture of the chain

and the relative value of the chain as a silent drive chain in the automobile industry. A number of firms had been negotiating for a copy of the report. The original report had been given by the plaintiff to a client of the plaintiff before any negotiations for the report had been entered into between the plaintiff and the Precision Chain Corporation. The original report was given to the client for the information of the client only, and the client did not make the report public. The negotiations between the plaintiff and the Precision Chain Corporation were begun by the Precision Chain Corporation sending a telegram to the plaintiff asking for the report.

In answer to that telegram the plaintiff on July 26, 1924, sent the Precision Chain Corporation the following telegram, which was the telegram that was erroneously transmitted by the defendant: "Upon receipt of telegram from you saying you will send me check for five hundred dollars for part expense of report I will put report in special delivery Twentieth Century mail Sunday Answer my residence Seven Eleven Linden Avenue Wilmette Illinois."

The error which the defendant made was that it changed the $500 in the original telegram to $53 in the telegram as transmitted to the Precision Chain Corporation. When the Precision Chain Corporation received the erroneous telegram it apparently assumed that the plaintiff was offering to sell his report for $53. The Precision Chain Corporation thereupon on July 28, 1924, sent the plaintiff the following telegram: "Your telegram not received until this morning Will send your check today Mail report positively Twentieth Century today Wire."

Immediately on receiving this telegram the plaintiff under a mistake of fact sent the report to the Precision Chain Corporation. On July 30, 1924, the plaintiff received a letter from the Precision Chain Corporation inclosing a check to the plaintiff for $53.

The plaintiff at once telegraphed and wrote the Precision Chain Corporation that an error had been made in the amount of the check, and returned the check in the letter, but did not ask for the return of the report. In reply to the plaintiff's telegram and letter the Precision Chain Corporation on July 31, 1923, wrote the plaintiff the following letter:

"On Monday morning, July 28th, we received a telegram dated July 26th and signed by you, as follows: 'Upon receipt of telegram from you saying you will send me check for $53.00 part expenses of report I will put report in special delivery 20th Century mail Sunday Answer my residence 711 Linden Ave Wilmette Illinois.' You will note the figure quoted is $53.00. This represented about what we thought your report would be worth to us. The original telegram is in our possession. We received the report, ond also your telegram calling for $500.00, you assuming that the telegram had specified that amount. We also received this morning your letter of July 30th in explanation. Yesterday, July 30th, we received what the Western Union calls a duplicate of your telegram of July 26th, but in this the amount is $500, whereas the original called for $53.00. The error apparently lies with the Western Union. We feel sure that you know we are, and have been, proceeding in entire good faith. Through no fault of ours an error has been made. We have the report, and our check for $53.00 which you returned. We should not have been willing to consider paying $500.00. We do not estimate the final value of your report at the sum of $53.00, but that is its present value to us. We shall be glad to receive your further comments."

After the letter was received by the plaintiff, as far as the record shows, nothing was done further in the matter either by the plaintiff or by the Precision Chain Corporation. It does not appear from the record that after the plaintiff received this letter

of July 31, 1924, from the Precision Chain Corporation he ever directed the Precision Chain Corporation to return the report to him or notified the Precision Chain Corporation that he would not permit that corporation to use the report.

Assuming, for the sake of argument, that the plaintiff may recover damages from the defendant for the value of the report if it was unlawfully appropriated and published by the Precision Chain Corporation, it is evident that the plaintiff must show that the report was unlawfully appropriated and published by the Precision Chain Corporation. If the Precision Chain Corporation unlawfully published the report, such publication would have been an appropriation of the report. But has the plaintiff shown that the Precision Chain Corporation unlawfully published the report? In this view of the case the first question that arises on the evidence is when and how did the Precision Chain Corporation appropriate the report and make it public. The only evidence in this respect is the testimony of the plaintiff that the Precision Chain Corporation made the report public, "used it in exploiting their business," and that "they are using it today." There is no evidence, however, that we can find, as to when the report was made public by the Precision Chain Corporation, or that the plaintiff ever made a demand on the Precision Chain Corporation to return the report. The evidence does not show that when the plaintiff sent the telegram to the Precision Chain Corporation informing it of the mistake, and wrote the letter to the company returning the check for $53 to it, the plaintiff notified the company, either in the telegram or in the letter, to return the report to him. After the plaintiff sent the telegram and returned the $53 to the Precision Chain Corporation, the Precision Chain Corporation wrote the letter of July 31, 1924, to the plaintiff stating that the company had the report. It is obvious that if the

report was made public by the Precision Chain Corporation before the plaintiff received its letter of July 31, 1924, a materially different question would be presented from the question which would arise if the Precision Chain Corporation had made the report public after the plaintiff had received that letter. It will be observed that after stating that the Precision Chain Corporation has "the report" the letter concludes: "We shall be glad to receive your further comments." The record does not show that the plaintiff made any "further comments" or gave any directions in regard to the report. Apparently the plaintiff permitted the Precision Chain Corporation to keep the report notwithstanding the fact that the plaintiff had the opportunity to make a demand on the Precision Chain Corporation to return the report to him. It is true that the plaintiff testified: "As they [the Precision Chain Corporation] are the parties in interest, in exploiting and raising money, they have my report and are publishing it right along, and there would be no chance for me to sell what the investors might easily get for nothing." In other words, it is the contention of the plaintiff that the negligence of the defendant made it possible for the Precision Chain Corporation to appropriate and to publish the report, and that the publication of the report by the Precision Chain Corporation rendered the report valueless. These contentions presuppose that the evidence establishes the fact that the plaintiff was powerless to prevent the Precision Chain Corporation from appropriating and publishing the report, and that the publication of the report by the Precision Chain Corporation was not made because of any failure on the part of the plaintiff to assert his legal rights to reclaim the report. But since the evidence does not show that the Precision Chain Corporation published the report before the plaintiff had an opportunity to prevent its publication, or before the plaintiff had an opportunity

to forbid its publication, or that the publication of the report was made after a demand by the plaintiff that the report should be returned to him, the plaintiff is not in a position to make such contentions. Apparently as far as the record shows, the plaintiff acquiesced in the use which the Precision Chain Corporation made of the report.

Whether the plaintiff can be charged with having neglected to demand the return of the report in time to prevent its publication by the Precision Chain Corporation, or with having made it possible by his acquiescence or inaction for the Precision Chain Corporation to publish the report, cannot be determined in the absence of evidence fixing the time when the Precision Chain Corporation actually published the report. The evidence does not show that the Precision Chain Corporation published the report without giving the plaintiff an opportunity to direct the Precision Chain Corporation to return the report to the plaintiff. On the contrary, the letter of the Precision Chain Corporation of July 31, 1924, invited the plaintiff to indicate what his attitude might be in the circumstances. If at that time the Precision Chain Corporation had not published the report, the plaintiff should have demanded that the report be returned to him. If the Precision Chain Corporation had refused to comply with such a demand, then a different question might be presented.

The plaintiff testified that after the delivery of the report to the Precision Chain Corporation, the report "had no further value" to him; that he "could find no other market for it." This testimony alone is wholly insufficient to show that the value of the report was destroyed. It would have to be shown further that the Precision Chain Corporation had made the report public. The mere delivery of the report to the Precision Chain Corporation, without publication of the report by the Precision Chain Corporation, ob-

viously would not destroy the value of the report. If the report had not been published by the Precision Chain Corporation after its delivery to the corporation, the value of the report would have been unimpaired, and the report could have been returned to the plaintiff if the plaintiff had so demanded. That the mere delivery of the report to the Precision Chain Corporation, without publication by it of the report, did not render the report valueless, is shown by the testimony of the plaintiff, in which he stated that the original report had been given to a client of his for the client's own information, and that the client did not make the report public.

We are of the opinion that on the present record the plaintiff is not entitled to recover for the value of the report; that the only damages that he is entitled to recover are practically nominal damages, namely, the cost of the telegram which was erroneously transmitted by the defendant, the cost of the telegram notifying the Precision Chain Corporation of the mistake made by the defendant, and the postage on his letter.

Counsel for the defendant have argued the question of damages on the theory that the negligence of the defendant was not the proximate cause of the plaintiff's damages, if any, but that the act of the Precision Chain Corporation in making the report public was the proximate cause of any damages the plaintiff may have sustained, and, furthermore, that the plaintiff cannot recover damages on the basis of the market value of the report because such damages are too speculative and conjectural. Counsel for the plaintiff contends that the measure of damages is the difference between the amount specified in the correct telegram, namely, $500, and the amount in the telegram erroneously transmitted, namely, $53.

In the view that we have taken of the case it will not be necessary to consider any of these contentions.

For the reasons stated the judgment of the trial court is reversed and the cause remanded.

*Reversed and remanded.*

MATCHETT, P. J., and McSURELY, J., concur.